[Crim. No. 2411.   Third Dist.   Dec. 16, 1953.]

THE PEOPLE, Respondent, v. FRANCISCO REYNOSO et al., Appellants.

John L. Briscoe and Richard J. Gibson for Appellants.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Appellants Reynoso and Martinez and Luis Romero and Antonio Segura were charged with the crime of robbery. Romero pleaded guilty but Segura and appellants entered pleas of not guilty, and, following a trial before a jury, all three were found guilty of robbery in the second degree. Reynoso and Martinez made a motion for a new trial which was denied, and they have appealed from the judgment entered upon the verdict.

It appears from the record that at about 2 o'clock in the morning of May 28, 1952, Fausto Valoria was walking down a street in Stockton when he was hit over the head by two assailants and robbed of clothing and a wallet containing $40 and pictures. The victim had spent the evening with his former wife and their friend, Mrs. Cordova, and when they left his apartment to walk home he decided to follow them for their protection. When the two women had gone about a block and a half, they noticed an old Ford or Chevrolet car with three men in the front seat circling the block three times, and at about the same time two men walked past them. They became frightened and hurried to Mrs. Cordova's house. Shortly thereafter Mr. Valoria, who had been about a block and a half behind them, arrived and told them he had just been beaten and robbed. His head was bloody and his shoes, jacket, money and wallet were gone. The police were called and went to the Cordova home and arranged for Valoria to be taken to the emergency hospital.

On the sidewalk in front of the Cordova home they observed a large clot of blood extending several inches. There was a gravel driveway covered with a flower-type pollen which had deep indentations about 10 to 14 inches long and about 2 or 3 inches deep. There was also blood mixed in with the gravel on the driveway and a large deposit of blood on the sidewalk as well as blood that had been tracked on the sidewalk in a southerly direction. Samples of pollen or the small leaf particles were taken from the tree in the Cordova driveway as well as a sample from the live branch of the tree.

The defendants were apprehended about 3:10 a. m. near the vicinity of the robbery in Stockton. Romero, Segura, Martinez and Reynoso were in an old Ford car which Romero was driving. Reynoso was sitting next to Romero in the front seat and Segura and Martinez were in the back seat. When a search was made of the car, the officers removed a wallet and clothing which were later identified as Valoria's. These articles were on the floor of the car between the front and back seats, but no money was found in the car. The defendants were taken to the hospital and while in the patrol car the defendant Reynoso was observed licking his right hand where it appeared that he had blood between the knuckles.

When the defendants arrived at the hospital they were required to strip and their clothes were taken from them. Each defendant's clothes were placed in a separate bag and labeled. A sample of pollen or leaf was taken from the floor mat on the right side of the front floor of the car in which the defendants were apprehended.

The testimony of the expert witnesses Roger Greene, criminologist of the Bureau of Criminal Identification of the State of California, and Dr. Kenneth Stocking, an expert on plant identification and associate professor of botany at the College of the Pacific, was to the effect that one of the shoes worn by Martinez contained a small piece of a flower plant in the instep and had small streaks of blood on it; that the flower parts on this shoe were the same as the flower and leaf samples taken from the Cordova driveway, and that the shoe of Reynoso contained the same type of gravel as was found in the driveway of Mrs. Cordova's house.

Dr. Stocking further testified that the tree found in Mrs. Cordova's driveway was a rare type of tree known as the prunus ilicifolia or "holly leaf cherry"; that he made an examination of the vicinity of Stockton and found only about four trees of that type in the Stockton area, three of which were on the Stockton College campus. None of the nurseries in the area listed the plant or had it in their nurseries. Dr. Stocking, who also taught courses in science and rock identification, found that the gravel contained on the shoes of two of the defendants was of the same size and crystalline structure as that found in Mrs. Cordova's driveway. The other places where similar plants were found did not contain gravel of the same type as found in Mrs. Cordova's driveway.

The appellants argue that the circumstantial evidence, consisting primarily of their being in the car in which the

victim's wallet and clothing were found shortly after commission of the crime, is wholly insufficient to sustain the verdict. They particularly emphasize that Mr. Valoria claimed he was accosted by only two men and that the particle of leaf found on appellant Martinez' shoe could have been picked up from the floor of the car where it had previously fallen from Romero's or "Frank's" shoe before Segura and appellants entered the vehicle. However, as pointed out by respondent, if Romero and "Frank" had ridden alone in the car after the commission of the robbery, it is more likely that "Frank" and Romero would have shared the front seat rather than for one to have occupied the back seat alone. The appellant Martinez, upon whose shoe was found the incriminating piece of leaf, was seated in the back seat of the car when he and his three companions were arrested. The jury could, therefore, properly conclude that Martinez could not have picked up the leaf from the floor of the back seat of the car but that it became attached to his shoe when he participated in the robbery in the Cordova driveway.

Furthermore, the jury was not required to believe Romero's testimony that there was such a person as "Frank" who assisted him in the robbery. And the jury also could have concluded from the evidence that five men participated in the robbery, namely, the two appellants, Romero and Segura and "Frank," which would explain the three men seen driving around the block at about the same time that the two men passed Mrs. Valoria and Mrs. Cordova.

The jury might also have reached the conclusion that the three men whom the two women observed riding in the car picked up the two men who walked past them after the two men had beaten and robbed Valoria, and that "Frank" could then have separated from them with the missing pictures and money before the other four were apprehended.

The apprehension of appellants and Romero and Segura not far from the scene of the robbery, in an automobile similar in appearance to the one which the two women saw circling the block; the finding of Valoria's wallet and clothing in the car; the blood between the knuckles of appellant Reynoso; the fact that one of the shoes worn by appellant Martinez had small streaks of blood on it and that there was a small piece of a flower plant in the instep which was the same as the flower and leaf samples taken from the Cordova driveway; the fact that the shoes of appellant Reynoso contained the same type of gravel as was found in the Cordova

driveway; the fact that Romero who was driving the car when they were apprehended, was the roommate of appellant Reynoso; together with all of the other facts and circumstances shown by the record were sufficient to support the verdict of the jury, even though the evidence was circumstantial and Valoria did not see the men who attacked him.

There is considerable similarity between the facts of the instant case and the case of *People* v. *Taylor,* 4 Cal.2d 495, where the court said at page 497 [50 P.2d 796]:

"Other than the evidence concerning the correspondence between the imprint of the heel of one of the shoes found in appellant's apartment and the imprint found on the invoice discovered on the floor at the place of the burglary, and the evidence that the shoe was his property, there is no evidence connecting appellant with said burglary. There is no direct evidence that he was in the vicinity of the burglarized premises on the night in question. . . . We can find no ground for holding that the evidence was legally insufficient to sustain the verdict. The most that can be said in favor of appellant's contention in this respect is that the evidence is far from conclusive and that for this reason appellant is the more likely to have been prejudiced by such errors as may have been committed in the course of the trial. But we are not able to discover any errors of sufficient importance to change the result."

Likewise similar is the case of *People* v. *Mercer,* 103 Cal. App.2d 462, where the court said at page 466 [229 P.2d 441]:

"From an examination of the record before us it is apparent that there is ample proof that the footprints made at the scene of the crime were made by the tennis shoes admittedly owned by the defendant; that the holes bored in the roof of the market and in the office door were bored by the same 1⅜-inch bit found in the defendant's car; that the defendant, a few months prior to the commission of the crime, purchased and had in his possession the same kind of dynamite as that found near the safe in the market; that the wood bit and tennis shoes were contaminated with tar such as was found in the tar paper covering the roof of the market. It was also shown that the defendant was familiar with the burglarized premises, a circumstance which may be considered by the jury. (*People* v. *Bennett,* 93 Cal.App.2d 549, 552 [209 P.2d 417].) It was also shown that the defendant was familiar with explosives, having admitted that he learned their use while in the service."

We are satisfied that the circumstances disclosed by the record reasonably justify the verdict of the jury and do not warrant interference with its determination. (*People* v. *Huizenga,* 34 Cal.2d 669, 675, 676 [213 P.2d 710].) As was said in *People* v. *Gutierrez,* 35 Cal.2d 721, at 727 [221 P.2d 22]:

"After conviction all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient substantial evidence to support it."

The judgment and order are affirmed.

Van Dyke, P. J., and Paulsen, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.